**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-1191**

---

GILROY J. DANIELS, SR.,

              Plaintiff – Appellant,

and

JEFFREY JOEL JUDY

              Plaintiff,

        v.

ARCADE, L.P.,

              Defendant – Appellee,

-------------------

NATIONAL FEDERATION OF THE BLIND

              Amicus Supporting Appellant.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Richard D. Bennett, District Judge.
(1:10-cv-00607-RDB)

---

Argued:  March 20, 2012              Decided:  April 24, 2012

---

Before KEENAN and FLOYD, Circuit Judges, and Norman K. MOON,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

---

Vacated and remanded by unpublished opinion.  Judge Keenan wrote
the opinion, in which Judge Floyd and Judge Moon joined.

**ARGUED:** Jessica Paulie Weber, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellant. Suzanne Sangree, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellee. **ON BRIEF:** Brien Penn, THE LAW OFFICE OF BRIEN PENN, LLC, Glenwood, Maryland, for Appellant. Eve L. Hill, Gregory P. Care, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Amicus Supporting Appellant.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Gilroy J. Daniels, Sr. appeals from the district court's order dismissing his lawsuit against Arcade, L.P. In the first amended complaint, Daniels and Jeffrey Joel Judy, a co-plaintiff who is not a party to this appeal, alleged that Arcade violated Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, et seq. (the ADA), by failing to provide adequate access for persons who require the use of wheelchairs to certain property purportedly owned or operated by Arcade. The district court held that Daniels and Judy each lacked standing because they failed to state plausible allegations that they suffered a "concrete, particularized injury," or that such injury, if it had occurred, was "traceable" to Arcade's actions. Upon our review of the parties' arguments, we hold that Daniels' allegations concerning injury and traceability were sufficient to withstand Arcade's motion to dismiss, and we vacate the district court's decision and remand for further proceedings.

I.

This case began in March 2010 when Judy, a resident of Florida who requires a wheelchair as his primary means of mobility, filed a complaint (the original complaint) against Arcade seeking injunctive and declaratory relief for Arcade's alleged violations of the ADA with respect to the Lexington

3

Market (the Market), in Baltimore, Maryland. The Market, which has been in operation for many years and includes the separate businesses of individual vendors, allegedly is owned or operated by Arcade. Daniels was not a party to the original complaint.

After Arcade filed a motion to dismiss the original complaint, Judy filed an amended complaint in which Daniels was added as a co-plaintiff. Daniels is a resident of Pasadena, Maryland, which is located about 20 miles from the Market. Like Judy, Daniels also requires a wheelchair as his primary means of mobility.

The amended complaint alleged that the Market, a place of public accommodation subject to the ADA, was in violation of the ADA because the property had inaccessible entry routes, inaccessible ramps throughout the facility, inaccessible restrooms, inaccessible counters, and other amenities that are inaccessible for persons who require the use of a wheelchair. The amended complaint also alleged that Arcade is the "owner, lessee, and/or operator" of the Market, "whose main entrance is located at 400 West Lexington Street, . . . but whose property is located between N. Eutaw St., Marion St., W. Lexington St., N. Greene St., and W. Saratoga St."

With respect to Daniels, the amended complaint alleged that he "resides in close proximity to" the Market, and that he "regularly visits" the Market. The amended complaint further

4

alleged that Daniels "intends to continue to visit the [Market] in the future for his shopping needs," but that he will "continue to experience serious difficulty due to the barriers" described in the complaint. Arcade filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeking to dismiss the amended complaint on the basis that Daniels and Judy lacked standing.[1]

The district court granted Arcade's motion to dismiss, holding that Daniels and Judy failed to allege a "concrete and particularized injury," and that they failed to allege facts that plausibly would suggest that any such injury was "traceable" to Arcade's actions. With respect to the "concrete and particularized" injury requirement, the district court adopted a four-factor test from an unpublished decision rendered by an Ohio federal district court.[2] See Judy v. Pingue, No. 08-

---

[1] Arcade's motion to dismiss was premised on both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, although the district court analyzed the parties' arguments solely under Rule 12(b)(6). Neither party assigns error to the district court's omission of a Rule 12(b)(1) analysis. Accordingly, we address only whether the district court erred in dismissing the amended complaint under Rule 12(b)(6).

[2] In Pingue, the Southern District of Ohio also relied on unpublished district court decisions in setting forth this four-factor test. See 2009 WL 4261389, at *2 (citing D'lil v. Stardust Vacation Club, No. 2:00-CV-01496, 2001 WL 1825832, at *3 (E.D. Cal. Dec. 21, 2001); Vaughn v. Rent-a-Center, No. 2:06-CV-1207, 2009 WL 723166 (S.D. Ohio March 16, 2009)). We are not (Continued)

859, 2009 WL 4261389 (S.D. Ohio Nov. 25, 2009). Accordingly, the district court analyzed "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." Id. at *2. In addition to these four factors, the district court added a fifth factor, the number of lawsuits previously filed by the plaintiffs.

With regard to Daniels, the district court held that the "proximity" factor weighed in his favor because he lived about 20 miles from the Market. However, the district court held that the remaining factors weighed against a finding that Daniels suffered a concrete and particularized injury. The district court noted Daniels' allegation that he "regularly visits" the Market, but held that Daniels' failure to provide specific dates on which he previously visited the Market rendered his allegations vague, "cast[ed] doubt" on whether he would continue to patronize the Market in the future, and did not suffice to establish his "frequency of travel near defendant."

The district court also noted Daniels' statement that he "intends to continue to visit [the Market] in the future for his

aware of any published federal appellate decisions that have adopted Pingue's four-factor test.

6

shopping needs," but held that this assertion failed to demonstrate the "requisite concrete and specific intent to return" necessary to establish standing. Finally, the district court held that Daniels' "litigation history" of joining two other ADA complaints filed by Judy "undermine[d]" his "vague statements" regarding his intention to return to the Market. Accordingly, the district court held that Daniels lacked standing because he failed to allege facts suggesting that he was likely to return to the Market, and therefore did not adequately allege a "real threat of future harm."

As an independent basis for dismissal, the district court also held that the amended complaint failed to allege facts suggesting that any injury was traceable to Arcade. In reaching this conclusion, the district held that although the amended complaint alleged that Arcade was the "owner, lessee, and/or operator" of the Market, this allegation was insufficient in light of an affidavit submitted by John M. Prugh, Arcade's general partner. In this affidavit, Prugh stated that Arcade owns the buildings located at 403, 421, and 423 West Lexington Street, but that Arcade does not own or lease 400 West Lexington Street nor does Arcade "operate" the Market. Relying on this affidavit, the district court concluded that Arcade could not be held responsible for the architectural barriers identified in the amended complaint. After the district court entered its

7

order granting Arcade's motion to dismiss, Daniels, but not Judy, timely filed a notice of appeal.

## II.

We review de novo the district court's decision granting Arcade's motion to dismiss and, in conducting our review, we assume as true all well-pleaded facts and draw all reasonable inferences in favor of Daniels, the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). However, we will not accept as true any unwarranted inferences or unreasonable conclusions. Id. Instead, the allegations must establish a plausible claim to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face").

In reviewing the district court's dismissal of the amended complaint on the basis that Daniels lacked standing, we observe that the requirement of standing is a threshold requirement implicating the jurisdiction of the federal courts, and is "perhaps the most important" condition for a justiciable claim. Allen v. Wright, 468 U.S. 737, 750 (1984). The standing inquiry ensures that a plaintiff has a sufficient personal stake in a

8

dispute to render its judicial resolution appropriate. See id. at 750-51.

To meet the minimum constitutional requirements for standing, a plaintiff must establish three elements: (1) that the plaintiff has sustained an injury in fact; (2) that the injury is traceable to the defendants' actions; and (3) that the injury likely can be redressed by a favorable judicial decision. Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 396 (4th Cir. 2011) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). At the pleading stage, general factual allegations concerning the plaintiff's injury are sufficient because, in evaluating a motion to dismiss, courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561 (citation omitted).

To demonstrate an injury in fact, a plaintiff must suffer an invasion of a legally-protected interest that is concrete and particularized, as well as actual or imminent. Friends of the Earth, 629 F.3d at 396 (citing Lujan, 504 U.S. at 560). To satisfy the "traceability" requirement, "there must be a causal connection between the injury and the conduct complained of," rather than the injury occurring as a result of "the independent action of some third party not before the court." Lujan, 504 U.S. at 560 (citation omitted).

A.

We first address Daniels' argument that the district court erred in holding that he failed to allege facts demonstrating that he suffered an "injury in fact."  We decline at this time to endorse the four-factor test that the district court adopted from the Southern District of Ohio in Pingue.  Although this Court often has formulated or adopted factor-based tests to guide our analyses, the use of this type of analysis in some cases, such as in the present one, overly and unnecessarily complicates the issue at hand.

In this case, we simply are required to determine whether the amended complaint sufficiently alleges that Daniels suffered an injury that is concrete and particularized, as well as actual or imminent.  With regard to the "concrete and particularized" prong of the "injury in fact" requirement, we conclude that Daniels' allegations were sufficient to withstand Arcade's motion to dismiss.  Assuming that his allegations are true and construing all inferences in Daniels' favor, as we are required to do in this context, we observe that Daniels lives near the Market, had visited the Market before the filing of the amended complaint, and in fact "regularly visits" the Market.  During these visits, Daniels alleges, he was subject to discrimination within the meaning of the ADA by the following purported structural deficiencies of the Market:  inaccessible entry

10

routes, inaccessible ramps, inaccessible restrooms, and other inaccessible amenities. These alleged structural deficiencies excluded Daniels from, or denied him the benefits of, the goods and services offered by the Market's vendors.

Because he visited the Market and encountered these difficulties himself, Daniels' injury is "actual" and "concrete," rather than theoretical. Moreover, the injury is "particularized" because the injury affected Daniels "in a personal and individual way." Lujan, 504 U.S. 561 n.1.

Rather than monetary damages, the amended complaint seeks only declarative and injunctive relief, in addition to attorneys' fees and court costs. In seeking such "prospective equitable relief instead of damages for a concrete past harm," Daniels also must allege and prove that there is a "real and immediate threat" that he will be wronged again. Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 101-03 (1983)); see also Lyons, 461 U.S. at 111 (equitable remedy unavailable absent showing of irreparable injury, which requires sufficient likelihood that plaintiff will again be wronged in a similar way). It is this requirement that the district court held was lacking from Daniels' allegations in the amended complaint.

Although we agree with the district court that Daniels was required to state a plausible allegation that there is a

11

likelihood that he will suffer future harm, we disagree with the district court's conclusion that Daniels' allegations are insufficient. Daniels alleged that he "intends to continue to visit the [Market] in the future for his shopping needs." We must accept this allegation as true for purposes of the motion to dismiss, and we deem the allegation plausible because Daniels resides in relatively close proximity to the Market.

The district court found Daniels' statement that he intends to return to the market implausible for two reasons. First, the district court held that Daniels' failure to provide exact dates that he visited the Market in the past, and a more specific time at which he intends to visit the Market in the future, demonstrated the absence of a reasonable likelihood that he would return. However, we are aware of no precedent in this Circuit that requires this degree of specificity to survive a motion to dismiss, and we decline to impose such a requirement here.

Second, the district court held that Daniels' litigation history "undermine[d]" his statements concerning his intention to return to the Market. However, we are not faced with the issue here whether a party's extensive litigation history may be used to determine the plausibility of his alleged future intentions, because Daniels' litigation history is scant and, thus, cannot have served to undermine his allegations. As the

12

district court observed, Daniels was a party to two lawsuits raising claims of ADA violations in Maryland.  There is no indication in the record that either of these two lawsuits was held to have been frivolous.

"The right to sue and defend in the courts . . .  is one of the highest and most essential privileges of citizenship . . . [and] is granted and protected by the Federal Constitution." Chambers v. Baltimore & Ohio R.R. Co., 207 U.S. 142, 148 (1907). Absent a determination that Daniels has abused those privileges, we will not hold his past participation in the judicial process against him.  Accordingly, we conclude that Daniels' litigation history is not relevant to this case.

For these reasons, we hold that the district court erred in determining that Daniels failed to satisfy the "injury in fact" component of the standing requirement.  Our conclusion is not altered by Arcade's additional argument, not addressed by the district court, that Daniels failed to allege that he visited the Market before Judy filed the original complaint, to which Daniels was not a party.  Although it is unclear whether Daniels' "regular[]" visits to the Market began before the date of the original complaint, March 3, 2010, or instead began merely before the date of the amended complaint, August 9, 2010, we conclude that the resolution of this question is not necessary to the result we reach.  It is undisputed that Daniels

visited the Market before he became a party to this lawsuit when the amended complaint was filed. Under this Court's precedent, "an amended pleading ordinarily supersedes the original and renders it of no legal effect." Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001).

We acknowledge the cases from other courts cited by Arcade for the principle that a court's jurisdiction is determined by the pleadings at the time the lawsuit was initiated.[3] However, none of these cases cited by Arcade addresses the situation presented here, in which the sole plaintiff remaining in the case was not a party to the original complaint.[4] Moreover, all

---

[3] See Steger v. Franco, Inc., 228 F.3d 889 (8th Cir. 2000); Coalition for ICANN Transparency Inc. v. VeriSign, Inc., 771 F. Supp. 2d 1195 (N.D. Cal. 2011); Doran v. Del Taco, Inc., No. 04-046, 2006 WL 2037942 (C.D. Cal. July 5, 2006); Brother v. CPL Investments, Inc., 317 F. Supp. 2d 1358 (S.D. Fla. 2004); Brother v. Rossmore Tampa L.P., No. 03-1253, 2004 WL 3609350 (M.D. Fla. Aug. 19, 2004); Clark v. McDonald's Corp., 213 F.R.D. 198 (D.N.J. 2003); Ass'n for Disabled Americans, Inc., v. Claypool Holdings LLC, No. 00-0344, 2001 WL 1112109 (S.D. Ind. Aug. 6, 2001); Moyer v. Walt Disney World Co., 146 F. Supp. 2d 1249 (M.D. Fla. 2000).

[4] Arcade appropriately acknowledges in its brief a case from the District of Maryland, which involved a procedural history analogous to the present case and supports Daniels' argument. See Equal Rights Ctr. v. Abercrombie & Fitch Co., 767 F. Supp. 2d 510 (D. Md. 2010). The district court held in Abercrombie that a plaintiff who was not a party to the original complaint, but who joined the case upon the filing of an amended complaint in which she asserted injuries that occurred between the filing of the original and amended complaints, had standing to pursue her claims. See id. at 515. The court relied on our decision in Young, as discussed above. See id.

14

but one of these cases was decided before the Supreme Court issued its opinion in Rockwell International Corp. v. United States, in which the Court stated that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." 549 U.S. 457, 473-74 (2007). Accordingly, even if Daniels had not visited the Market until the period between the filing of the original complaint and when he became a party to this case by way of the amended complaint, Daniels had standing to pursue, and the district court had jurisdiction to adjudicate, the claims alleged in the amended complaint.

B.

We next address Daniels' argument that the district court erred in holding that Daniels' alleged injuries were not fairly traceable to Arcade. In reaching this conclusion, the district court stated that Prugh's affidavit attested that "Arcade does not, in fact, own, lease or operate" the Market. Upon our examination of the affidavit, however, we conclude that the district court's construction of the affidavit's content is unwarranted.

In the affidavit, Prugh stated that "Arcade owns the building located at 403, 421 and 423 West Lexington Street" in Baltimore. Prugh further attested that "Arcade does not own or

15

lease 400 West Lexington Street[,] [n]or does it operate the property commonly known as Lexington Market." We agree with Daniels' contention that these statements are "artfully worded," and do not serve to disclaim Arcade's potential ownership interest in the Market, or Arcade's potential operating interest in the buildings that comprise the Market but which do not have a street address of 400 West Lexington Street.

Additionally, Prugh's affidavit establishes that Arcade does in fact own the "building" located at 403, 421, and 423 West Lexington Street. Although the mailing address and main entrance of Lexington Market is listed as "400 West Lexington Street," there remains a dispute concerning whether the 403, 421, and 423 West Lexington Street addresses comprise a portion of the Market.[5] Daniels' injury could be traceable to Arcade, potentially rendering it liable under the ADA, if Arcade has any ownership or business interest in at least a part of the Market. See 42 U.S.C. § 12182(a) (prohibiting discrimination on the basis of disability by anyone who "owns, leases (or leases to), or operates a place of public accommodation").

For these reasons, Prugh's affidavit does not resolve the dispute concerning Arcade's legal relationship to the Market.

---

[5] The amended complaint alleged that the Market was located "between N. Eutaw St., Marion St., W. Lexington St., N. Greene St., and W. Saratoga St."

Accordingly, the district court erred in holding that Daniels lacked standing on the basis of his purported failure to allege adequately in the amended complaint that his injury was fairly traceable to Arcade's actions.

## III.

In conclusion, we hold that the district court erred in determining that Daniels lacked standing to pursue his claims against Arcade. Upon evaluating the amended complaint for purposes of Arcade's motion to dismiss, we conclude that Daniels sufficiently alleged an "injury in fact" that was "fairly traceable" to Arcade's actions. Accordingly, we vacate the district court's decision granting Arcade's motion to dismiss, and we remand this matter for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>