**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1638

JOHN NANNI,

        Plaintiff – Appellant,

    v.

ABERDEEN MARKETPLACE, INC.,

        Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, Senior District Judge. (1:15-cv-02570-WMN)

Argued: September 12, 2017                 Decided: December 21, 2017

Before TRAXLER and KING, Circuit Judges, and Raymond A. JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Traxler and Judge Jackson joined.

**ARGUED**: Brian T. Ku, KU & MUSSMAN, P.A., Pembroke Pines, Florida, for Appellant. William Nelson Sinclair, SILVERMAN, THOMPSON, SLUTKIN & WHITE, LLC, Baltimore, Maryland, for Appellee. **ON BRIEF**: Robert W. King, Hyattsville, Maryland, for Appellant.

KING, Circuit Judge:

Plaintiff John Nanni — a Delaware resident who suffers from post-polio syndrome and generally uses a wheelchair — appeals from the dismissal of his civil action against Aberdeen Marketplace, Inc. According to the operative amended complaint that Nanni filed in the District of Maryland in 2015, he has encountered and will continue to encounter unlawful barriers to access at Aberdeen's Marketplace Shopping Center (the "Marketplace"), which is located in northeast Maryland. *See Nanni v. Aberdeen Marketplace, Inc.*, No. 1:15-cv-02570 (D. Md. Nov. 5, 2015), ECF No. 5 (the "Complaint"). Those barriers — the Complaint alleges — hinder access to the Marketplace and discriminate against Nanni, in violation of the Americans with Disabilities Act (the "ADA"). Aberdeen sought dismissal of the Complaint by contending, inter alia, that Nanni's lack of standing to sue deprives the district court of subject matter jurisdiction. In May 2016, the court agreed with Aberdeen and dismissed the Complaint. *See Nanni v. Aberdeen Marketplace, Inc.*, No. 1:15-cv-02570 (D. Md. May 4, 2016), ECF No. 12 (the "Opinion"). Nanni has appealed the standing decision, asserting that the judgment of dismissal was erroneously awarded. As explained below, we are satisfied that Nanni has sufficiently alleged standing to sue and is entitled to pursue his ADA claim. We therefore vacate the judgment in favor of Aberdeen and remand for further proceedings.

I.

A.

In August 2015, Nanni initiated this civil action in the district court at Baltimore, alleging disability discrimination in contravention of the ADA and seeking declaratory and injunctive relief against Aberdeen. The Complaint identifies the essential relief that Nanni seeks as the district court's declaration that the Marketplace is in violation of the ADA, plus an injunction requiring Aberdeen to alter the Marketplace to "make it accessible to and usable by individuals with disabilities." *See* Compl. 5.

Nanni's ADA claim is premised on allegations that, several times each year, he travels southwest on I-95 from his home in Delaware to Baltimore and Washington, D.C., where he attends sporting events, visits with relatives, and participates in events for the disabled. *See* Compl. ¶ 10.[1] The Marketplace, which is located near exit 85 on I-95 in Maryland, constitutes a place of public accommodation and provides "a perfect place" to "stop to rest on drives and to take bathroom breaks." *Id.* ¶¶ 9-10.[2] Between 2013 and June 2015, Nanni visited the Marketplace at least three or four times, and he intends to make additional visits on his journeys to and from Baltimore and Washington. *Id.* ¶¶ 10,

---

[1] The relevant facts with respect to this appeal are largely derived from the Complaint. We take the factual allegations made therein as true and draw reasonable inferences in favor of Nanni. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

[2] Travelling southbound on I-95 from Delaware, the Marketplace is readily accessed off exit 85 onto Maryland Route 22. It is situated on Beards Hill Road in Aberdeen, about forty miles from Nanni's residence and approximately halfway to Baltimore.

13. Independent of Nanni's intention to return to the Marketplace as a customer, he plans to return as what the Complaint calls an "ADA tester." *Id.* ¶ 19.

During his visits to the Marketplace, Nanni has "experienced serious difficulty accessing the goods and utilizing the services therein," due to defendant Aberdeen's failure to comply with the ADA. *See* Compl. ¶ 11. Nanni has encountered major obstacles at the Marketplace, that is, barriers to access that pose serious difficulties for disabled individuals who rely on wheelchairs for mobility, including the following:

- Parking designated for use by persons with disabilities is inaccessible "due to excessive slopes, pavement in disrepair and lack of proper access aisles";

- Curb ramps for use by persons with disabilities are inaccessible "due to excessive slopes, steep side flares, failure to provide smooth transitions, and pavement in disrepair";

- One of the sidewalk ramps causes problems for the disabled because it has "excessive running slopes"; and

- Various routes of travel about the Marketplace are inaccessible to disabled persons "due to excessive slopes and pavement in disrepair."

*Id.* ¶ 14.

Each of those major obstacles and barriers to access have caused serious difficulties for Nanni. For example, the noncompliant parking spaces caused problems with entering and exiting Nanni's vehicle and required him to use extra care to avoid falling. *See* Compl. ¶ 14. The noncompliant curb ramps, sidewalk ramp, and routes of travel caused him serious difficulties in safely navigating and accessing the Marketplace. *Id.* Aberdeen's failure to comply with the accessibility requirements of the ADA have

4

thus deprived Nanni of his right to full and equal enjoyment of the Marketplace and his right to be free from discrimination on the basis of disability. *Id.* ¶ 15. As the Complaint specifies, those noncompliant barriers to access remain in place. *Id.* ¶ 16. As a result, Aberdeen

> continues to discriminate against [Nanni] by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to provide [him] an equal opportunity to participate in, or benefit from, the goods, services, facilities, privileges, advantages, and accommodations which [the Marketplace] offers to the general public.

*Id.* ¶ 15.

Notably, each of the specified barriers to access is readily removable, and removal would not impose an undue burden on Aberdeen. *See* Compl. ¶ 17. As the Complaint explains, a court ruling in Nanni's favor — i.e., a declaration of unlawfulness plus an injunction requiring Aberdeen to remove or modify the unlawful barriers to access and comply with the ADA — would resolve the equal access problems that have caused and otherwise will continue to cause Nanni's injuries. *Id.* ¶¶ 16-18.

B.

In response to the Complaint, Aberdeen sought its dismissal on two grounds. Aberdeen argued under Rule 12(b)(6) of the Federal Rules of Civil Procedure that the Complaint fails to state a claim upon which relief can be granted. Of relevance, Aberdeen also asserted under Rule 12(b)(1) that the district court is without subject matter jurisdiction because Nanni lacks standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (explaining that, to possess Article III constitutional standing to sue, three elements must be satisfied, that is, (1) the plaintiff

5

"must have suffered an injury in fact"; (2) "there must be a causal connection between the injury and the [defendant's] conduct"; and (3) the injury will likely "be redressed by a favorable decision"). Aberdeen specifically challenged the sufficiency of the Complaint with respect to *Lujan*'s injury-in-fact element.

By its Opinion of May 4, 2016, the district court dismissed Nanni's Complaint for lack of standing to sue. The Opinion recognized that, to satisfy the constitutional standing mandate, the Complaint must sufficiently allege the essential elements of standing. *See* Op. 4. Explaining the injury-in-fact element, the Opinion related that the Complaint must demonstrate "a concrete and particularized, actual or imminent invasion of a legally protected interest." *Id.* Additionally, because Nanni is seeking declaratory and injunctive relief, the Opinion recognized that the Complaint must establish "a real and immediate threat that [Nanni] will be wronged again." *Id.* (internal quotation marks omitted). Relying on a recent decision of the same district court, the Opinion specified that, in order to show a "real and immediate threat" of future injury, the Complaint had to allege and describe Nanni's "concrete, specific plans to return to the locus of the injury" and "indicate that [he] is likely to suffer the same injuries upon return." *Id.* at 5 (internal quotation marks omitted).[3]

---

[3] Although the Opinion's analysis of the injury-in-fact element references the Supreme Court's *Lujan* decision, the standard applied by the district court was drawn from a decision rendered in the District of Maryland. *See Nat'l All. for Accessibility, Inc. v. Millbank Hotel Partners*, No. 1:12-cv-03223 (D. Md. Feb. 20, 2013), ECF No. 22.

Although the Opinion recognized that the Complaint "clearly state[s] [Nanni's] intent to return" to the Marketplace, the district court dismissed on the premise that the Complaint fails to establish Nanni's likelihood of suffering future harm there. *See* Op. 6. In so ruling, the Opinion first determined that the Complaint inadequately describes Nanni's past injuries, leaving the court "to speculate as to the type of harm [Nanni] is likely to face on his return to the [Marketplace]." *Id.* at 6-7. Next, the Opinion related that the Complaint's lack of specificity left the court "to wonder which business within the [Marketplace] is 'the perfect place' for [Nanni] to stop and rest." *Id.* at 7. That is, the Opinion deemed the Complaint to be insufficiently specific regarding Nanni's alleged future injuries, explaining that the court was

> unable to find more than a mere possibility of future harm without any indication of the specific goods and services at [the Marketplace] that [Nanni] seeks out in his travels, or a particular convenience at this center that is more advantageous to [him] than that available at other centers along his route.

*Id.* at 8. The court considered Nanni's connection to the Marketplace to be "tenuous at best," explaining that Nanni could easily stop at any number of other places while driving up and down I-95 in order to rest or use the bathroom. *Id.*

Finally, the Opinion addressed the Complaint's allegation that Nanni would return to the Marketplace as an "ADA tester." *See* Op. 8. The Opinion accepted that Nanni would return to the Marketplace "to confirm its ADA-compliance," but recognized that Nanni "cannot use his status as a tester to satisfy the standing requirements where [he] would not have standing otherwise." *Id.* (internal quotation marks omitted). The Opinion further recognized that acting as a tester "is not improper," but observed that

7

Nanni's litigation history undermined "the plausibility of [Nanni's] threat of future injury at [the Marketplace]." *Id.* at 9.[4] Specifically, the Opinion invoked "substantially similar complaints" filed by Nanni in the District of Maryland against "defendant properties in the vicinity of Interstate 95," indicating that the Marketplace is not Nanni's sole choice of rest stop. *Id.* According to the Opinion, Nanni's litigation history also "heighten[ed] the appearance" that he planned to return to the Marketplace as an opportunistic litigant, rather than as a "bona fide patron[]." *Id.* at 10.

By its Order accompanying the Opinion, the court then dismissed the Complaint for lack of standing. *See Nanni v. Aberdeen Marketplace, Inc.*, No. 1:15-cv-02570 (D. Md. May 4, 2016), ECF No. 13. Nanni timely noted this appeal from the judgment, challenging the dismissal of his Complaint. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review issues of subject matter jurisdiction de novo. *See Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 369 (4th Cir. 2001). It is established that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We have recognized

_____

[4] Nanni's litigation history is not apparent in this record, but some aspects thereof were apparently brought to the district court's attention by way of written submissions made with respect to Aberdeen's dismissal request.

that "facial plausibility is established once . . . the complaint's factual allegations produce an inference . . . strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). In assessing the sufficiency of a complaint, we assume as true all its well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. *Id.* at 253. Thus, to satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft "to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility'" of that which is alleged. *Id.* at 256 (quoting *Iqbal*, 556 U.S. at 679).

## III.

### A.

On appeal, Nanni urges us to vacate the district court's decision on standing as fatally erroneous and to reinstate his Complaint. Put succinctly, Nanni maintains that the court erred in its Opinion by failing to recognize that the Complaint demonstrates that he suffered a concrete and particularized injury when he encountered the noncompliant parking spaces, curb ramps, sidewalk ramp, and routes throughout the Marketplace. *See* Br. of Appellant 12-19. Because the Complaint alleges that those "architectural barriers have not been removed and still exist," the court should have concluded that Nanni will "encounter the same barriers and suffer the same harm" on his future visits to the Marketplace. *Id.* at 19. Nanni relies on, inter alia, our unpublished decision in *Daniels v.*

9

*Arcade, L.P.*, 477 F. App'x 125, 129-30 (4th Cir. 2012), a similar ADA case in which we concluded that the complaint sufficiently pleaded the injury-in-fact element of standing by alleging that the plaintiff, who used a wheelchair, lived near and regularly visited the defendant property; that he had encountered structural deficiencies there, including inaccessible entry routes, ramps, restrooms, and other amenities; that those structural deficiencies had excluded the plaintiff from, or denied him the benefits of, the goods and services offered by the defendant property; and that the plaintiff planned to continue to visit the defendant property to shop.

Additionally, Nanni takes umbrage with the Opinion's determination that the Complaint is insufficiently specific as to the particular goods and services at the Marketplace that Nanni seeks out in his travels, and as to the reasons why Nanni chooses the Marketplace over other available rest stops. *See* Br. of Appellant 19-22. According to Nanni, once the district court acknowledged — as it properly did — that the Complaint plausibly alleges Nanni's intent to return to the Marketplace, that should have ended the court's inquiry on the likelihood of future harm. Instead, however, the Opinion deemed the Complaint inadequate and questioned Nanni's credibility and motives in returning to the Marketplace and pursuing his ADA claim against Aberdeen. Nanni contends that his motivations are "irrelevant to [his] right to be free from discrimination," *id.* at 21, and that the court inappropriately used merits-based criteria to dismiss the Complaint.

Aberdeen, on the other hand, maintains on appeal that the district court correctly dismissed the Complaint for lack of Nanni's standing to sue. As Aberdeen would have it, more than even the Opinion required is necessary to demonstrate the likelihood of future

10

injury. *See* Br. of Appellee 12-17. More specifically, the Complaint fatally fails to allege "a planned date of [Nanni's] return" to the Marketplace, as well as "any arrangements made for return, a reason why he would return, specific establishments [at the Marketplace] that he intends to return to, or information about what he intends to do on his return." *Id.* at 16. Aberdeen also distinguishes Nanni's ADA claim from the ADA claim in our *Daniels* decision, arguing that the likelihood of future injury was more plausible in *Daniels* because the plaintiff lived just twenty miles from the defendant property, whereas there are forty miles between Nanni's residence and the Marketplace. *Id.* at 18-21. Premised on *Daniels*, Aberdeen advocates the adoption of a "close proximity" test to determine the plausibility of a future injury allegation. *Id.*

As for the Opinion's reliance on Nanni's credibility and motives, Aberdeen defends it on the ground that matters such as Nanni's "tenuous at best" connection with the Marketplace and his litigation history go to the plausibility of the Complaint's allegation that Nanni is likely to suffer future injuries. *See* Br. of Appellee 21-23. Aberdeen also agrees with the district court that Nanni's intention of returning to the Marketplace as an "ADA tester" is — standing alone — insufficient to establish Nanni's standing to sue. *Id.* at 24-27. Finally, Aberdeen characterizes the Complaint as merely alleging "fears" of re-encountering barriers that cannot be substantiated without details about Nanni's plans for his return to the Marketplace. *Id.* at 27-29.

11

B.

1.

Turning to our analysis of Nanni's standing to sue, Title III of the ADA bars discrimination against individuals on the basis of disability in places of public accommodation. *See* 42 U.S.C. § 12182. In enacting the ADA, Congress recognized that we live in a "society [that] has tended to isolate and segregate individuals with disabilities." *Id.* § 12101. Such individuals "continually encounter various forms of discrimination, including outright intentional exclusion" as a result of various barriers to access, including those of an architectural nature. *Id.* The ADA applies to privately operated places of public accommodation, such as the Marketplace. *Id.* § 12182(a).[5] Furthermore, discrimination under the ADA includes the "failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv).

In order for Nanni to pursue his ADA claim, he must satisfy "the irreducible constitutional minimum of standing" that is required in order to invoke jurisdiction in the

---

[5] The ADA's prohibition against discrimination in public accommodations, which is in part codified in section 12182(a) of Title 42 of the United States Code, proscribes private entities from discriminating on the basis of disability:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*See* 42 U.S.C. § 12182(a).

12

federal courts. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The doctrine of standing is concerned with the constitutional limitation on federal court jurisdiction to the tribunal's resolution of "cases" and "controversies" that are appropriately justiciable. *See* U.S. Const. art. III § 2, cl. 1. We have recognized that "[d]octrines like standing, mootness, and ripeness are simply subsets of [the Constitution's] command that the courts resolve disputes, rather than emit random advice." *See Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991). In assessing a question of standing to sue, we are not concerned with the merits of the plaintiff's claim. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005). Instead, our only aim is to assess "whether [the] plaintiff has a sufficiently personal stake in the lawsuit to justify the invocation of federal court jurisdiction." *Id.* at 461 (internal quotation marks omitted).

In order to possess standing to sue in this proceeding, Nanni must satisfy the elements of standing enunciated by the Supreme Court in its *Lujan* decision. And only one of those elements — the "injury-in-fact" element — is being litigated here. To satisfy that specific element, the Complaint must show that Nanni "suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (footnote, citation, and internal quotation marks omitted). As further mandated by *Lujan*, because Nanni is seeking prospective declaratory and injunctive relief rather than damages, the allegations in the Complaint of past injuries "do[] not in [themselves] show

13

a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 564 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).[6]

2.

The issue we face in this appeal is therefore simple and focused. Does Nanni's Complaint sufficiently allege standing to sue under *Lujan*'s injury-in-fact element?

a.

First of all, we reject the district court's determination in its Opinion that the Complaint does not sufficiently allege past injuries that are concrete and particularized, as well as actual or imminent. To satisfy that standard, a plaintiff may demonstrate an "actual" "invasion of a legally protected interest" that "affect[s] the plaintiff in a personal and individual way." *See Lujan*, 504 U.S. at 560 & n.1. As illustrated by our recent unpublished decision in *Daniels*, a past injury is sufficiently pleaded for purposes of an ADA claim where a disabled individual who requires a wheelchair for mobility alleges that he has personally encountered noncompliant architectural barriers and describes how those barriers caused him harm. *See* 477 F. App'x at 129-30.

---

[6] The second and third elements of standing to sue, as identified by the Supreme Court in *Lujan*, are the following: "there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See* 504 U.S. at 560-61 (alterations and internal quotation marks omitted). Neither of those *Lujan* elements are disputed in these proceedings.

14

According to the Complaint, Nanni — who relies on a wheelchair for mobility — visited the Marketplace at least three or four times between 2013 and 2015. *See* Compl. ¶ 10. During those visits, Nanni encountered noncompliant parking spaces that "caused him difficulty exiting and entering his vehicle because of the extra care needed to avoid a fall." *Id.* ¶ 14. Nanni also encountered other barriers to access throughout the Marketplace, including curb ramps and a sidewalk ramp, which required him to exercise "extra care." *Id.* Those barriers placed Nanni at risk of physical harm and denied him equal access to the goods and services located at the Marketplace. *Id.* ¶¶ 14-15.

Architectural barriers, such as those identified here, result in exclusion, segregation, and other differential treatment of persons with disabilities — precisely the types of systemic discrimination the ADA seeks to erase. *See* 42 U.S.C. § 12182(a). By alleging that Nanni visited the Marketplace and personally encountered architectural barriers to access, the Complaint pleads past injuries that are concrete, particularized, and actual. Indeed, there is nothing conjectural or hypothetical about the injuries Nanni suffered during his visits to the Marketplace.

b.

We therefore proceed to the question of whether the Complaint sufficiently alleges a likelihood that Nanni will again suffer such injuries, and we conclude that it does. *See Lyons*, 461 U.S. at 105 (explaining that "standing to seek the injunction requested depended on whether [the plaintiff] was likely to suffer future injury"). That is, the Complaint satisfies the future injury requirement by plausibly alleging "a real and

15

immediate threat of repeated injury." *See Bryant*, 924 F.2d at 529 (quoting *Lyons*, 461 U.S. at 102).

In our *Daniels* decision, we addressed — in a similar context — the sufficiency of allegations of the likelihood of future injury with respect to the ADA plaintiff's standing to seek equitable relief. *See* 477 F. App'x at 129-30. We therein recognized that the complaint's allegations of past injuries on the plaintiff's earlier visits to the defendant property (the Lexington Market in Baltimore), coupled with his alleged intent "to continue to visit the Market in the future for his shopping needs," were sufficient to plead the likelihood of future injury. *Id.* (alteration and internal quotation marks omitted). We also observed that the complaint's allegation of a plan to return to the Market was plausible, in that the plaintiff "reside[d] in relatively close proximity to the Market," i.e., about twenty miles away. *Id.* at 127, 130.

Importantly, the *Daniels* principle — that when an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury — is entirely consistent with the decisions of our fellow courts of appeals. *See, e.g.*, *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013); *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2014); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008); *Tandy v. Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323,

16

1335 (11th Cir. 2013).[7] Put simply, we are satisfied that the *Daniels* decision properly described and applied the pleading obligations for standing with respect to *Lujan*'s injury-in-fact element. We therefore adopt the *Daniels* principle and apply it in disposing of this appeal.

Consistent with the *Daniels* principle, the Complaint sufficiently pleads that Nanni suffered past injuries on his visits to the Marketplace. Thus, contrary to the district court's Opinion, we are not left "to speculate as to the type of harm [Nanni] is likely to face on his return to the [Marketplace]." *See* Op. 7. Rather, we know exactly the type of future injury that Nanni faces: the denial of equal access to the Marketplace's goods and services by way of architectural barriers that include noncompliant parking spaces and ramps. Significantly, the Complaint's allegations of future injury also are plausible. That is, it is entirely plausible that Nanni will return to the Marketplace to rest and take bathroom breaks during his trips several times a year from his home in Delaware to Baltimore and Washington, D.C.

In these circumstances, the district court applied an overly stringent and erroneous requirement of specificity to its assessment of the Complaint. We reject the court's

---

[7] We would be remiss if we failed to mention that certain courts of appeals have adopted a less stringent pleading requirement than the *Daniels* standard. At least two courts have recognized that, once an ADA plaintiff has been injured by unlawful barriers to access, his allegation of "actual knowledge of illegal barriers at a public accommodation" is alone sufficient to show the likelihood of future harm for purposes of standing to sue. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002); *see also Dudley v. Hannaford Bros.*, 333 F.3d 299, 306-307 (1st Cir. 2003) (same).

17

conclusion that the Complaint cannot sufficiently allege the likelihood of future harm without naming specific goods, services, and conveniences that render the Marketplace a "more advantageous" place to stop than others along his travel route. *See* Op. 8. We similarly reject Aberdeen's theory that Nanni was obliged to allege such specifics as the precise dates and arrangements for his return to the Marketplace, his reasons for returning, and the particular Marketplace establishments he plans to visit. As we explained in *Daniels*, "we are aware of no precedent in this Circuit that requires this degree of specificity to survive a motion to dismiss, and we decline to impose such a requirement here." *See* 477 F. App'x at 130; *see also Dudley v. Hannaford Bros.*, 333 F.3d 299, 307 (1st Cir. 2003) (explaining that imposition of a limitation on ADA relief to "instances in which a future violation appears certain to occur would create a standard far more demanding than that contemplated by the congressional objectives"). Furthermore, that other, ADA-compliant facilities may be located near the Marketplace along I-95 will not excuse any of Aberdeen's violations of the ADA.

We also reject Aberdeen's invitation — premised on the facts of *Daniels* — to draw an arbitrary line of geographical proximity somewhere between twenty and forty miles for purposes of determining an ADA plaintiff's standing to sue. Although proximity could be a factor relevant to the plausibility of future injury, the fact that Nanni lives forty miles from the Marketplace is not fatal to his standing, especially in view of Nanni's patronage of the Marketplace for rest and bathroom breaks during his regular travels. Whereas it was plausible in *Daniels* that the plaintiff would shop at the Market twenty miles from his residence, it is entirely plausible here that Nanni will stop for rest

18

and bathroom breaks at the Marketplace while travelling north and south on I-95. In sum, the facts of each case control the plausibility analysis.

3.

A brief discussion of the district court's reliance on Nanni's credibility and motives is also warranted. As explained above, the Opinion considered the Complaint's allegation that Nanni would return to the Marketplace as an "ADA tester," along with his litigation history, in assessing whether he possesses standing to sue Aberdeen. The court observed that Nanni's tester status alone is insufficient to confer standing upon him — a proposition that Nanni has not, in any event, disputed. The Opinion then went on to conclude that, although acting as a tester is not improper, Nanni's particular litigation history undermined the plausibility of his future injury theory. That is, the Opinion deemed Nanni to be an opportunistic litigant, rather than a bona fide patron of the Marketplace.

Put simply, however, neither Nanni's status as an "ADA tester" nor his litigation history strips him of standing to sue Aberdeen. *See Houston*, 733 F.3d at 1332 (explaining that a plaintiff's "status as a tester does not deprive him of standing to maintain his civil action for injunctive relief under . . . the ADA's Title III"); *Daniels*, 477 F. App'x at 130 (rejecting district court's reliance on plaintiff's litigation history to deem his future injury claim implausible). As we recognized in our *Daniels* decision — and emphasize again today — a citizen's "right to sue and defend in the courts is one of the highest and most essential privileges of citizenship and is granted and protected by the Federal Constitution." *See* 477 F. App'x at 130 (alterations omitted) (quoting

*Chambers v. Balt. & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907)). Moreover, under our system, all citizens are obliged to obey the law and to aid law enforcement efforts. In various situations, citizens are required by law to report violators to the proper authorities. *See, e.g.*, 18 U.S.C. § 4 (requiring citizens to report felony offenses to judges and other authorities). As the Supreme Court acknowledged several years ago, the "enforcement [of civil rights laws] would prove difficult" and our country will be obliged "to rely in part upon private litigation as a means of securing broad compliance." *See Newman v. Piggie Park Enters.*, 390 U.S. 400, 401 (1968). That very principle is also embodied in the ADA. *See Dudley*, 333 F.3d at 306-07 (discussing importance of private litigation in achieving broad compliance with ADA). In the community of those citizens who are wheelchair bound, the identification of public accommodation facilities that flout the ADA is obviously an important activity.

At bottom, we reject the proposition that Nanni's motivations in pursuing his ADA claim against Aberdeen deprive him of standing to sue in these proceedings. And, predicated on our de novo review of the Complaint, we are satisfied that Nanni's standing to sue is sufficiently alleged.

IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*