**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1312

CLARENCE GRIFFIN,

> Plaintiff – Appellant,

v.

DEPARTMENT OF LABOR FEDERAL CREDIT UNION, a/k/a DOLFCU,

> Defendant – Appellee,

------------------------------

NATIONAL ASSOCIATION OF FEDERALLY-INSURED CREDIT UNIONS; CREDIT UNION NATIONAL ASSOCIATION,

> Amici Supporting Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, Senior District Judge. (1:17-cv-01419-TSE-IDD)

Argued: October 30, 2018                    Decided: January 3, 2019

Before WILKINSON, KING, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Quattlebaum joined. Judge King wrote an opinion concurring in the judgment.

**ARGUED:** Thomas Eugene Strelka, STRELKA LAW OFFICE, Roanoke, Virginia, for Appellant. John Michael Bredehoft, KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellee. **ON BRIEF:** L. Leigh Strelka, Norvell W. West IV, STRELKA LAW OFFICE, Roanoke, Virginia; Scott J. Ferrell, Victoria C. Knowles, PACIFIC TRIAL ATTORNEYS, P.C., Newport Beach, California, for Appellant. Edward Lee Isler, Mark E. Papadopoulos, ISLER DARE, P.C., Vienna, Virginia, for Amicus National Association of Federally-Insured Credit Unions. Jonathan C. Sandler, Los Angeles, California, Christine A. Samsel, Denver, Colorado, Michael H. Pryor, BROWNSTEIN HYATT FARBER SCHRECK, LLP, Washington, D.C., for Amicus Credit Union National Association.

———————————

WILKINSON, Circuit Judge:

Appellant here has asserted that he has standing to challenge various aspects of the Department of Labor Federal Credit Union's website under the Americans with Disabilities Act. 42 U.S.C. § 12101 *et seq*. The district court granted the Credit Union's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss. Because we agree that appellant lacks constitutional standing, we now affirm the judgment.

I.

The Department of Labor Federal Credit Union, the appellee, is a federal credit union that, under the Federal Credit Union Act of 1934, accepts as members only those who share the "common bond" of being current and former employees of the Department of Labor and their immediate families and households. 12 U.S.C. § 1759(b). Only members can take advantage of the Credit Union's products or services; only members may open an account or take out a loan or enjoy in any way the benefits of the Credit Union. The Credit Union maintains a website that describes its services and products.

Clarence Griffin, the appellant, is a blind resident of Virginia. Because of his visual impairment, Griffin uses a screen reader to access the Internet. As he explains in his complaint, screen readers help the blind access the Internet by reading aloud the text that appears on a website. Website operators often take special care to ensure their sites are legible to screen readers. Many visually impaired people like Griffin also rely more heavily on keyboards than mouses to navigate the Internet. Because of this, it is recommended that website operators avoid "redundant links," which can be tedious and time-consuming for keyboard users to navigate.

3

Griffin is not eligible for membership in the Credit Union. He does not work for the Department of Labor and never has in the past. No one in his immediate family has ever worked for the Department of Labor, nor has any member of his household. He makes no allegation in his complaint that he is legally permitted to make use of the Credit Union's benefits.[*]

According to his complaint, Griffin tried to access the Credit Union's website in October of 2017. He alleges his attempt was stymied in three ways. First, there were linked images that lacked "alternative text." As a consequence, Griffin's screen reader could not describe those images to him and he could not navigate to the linked content. Second, there were "redundant links." This meant Griffin had to take additional, unnecessary steps to make full use of the site. And third, "form labels" were missing. Griffin could not tell when the website wanted him to input information that is often necessary to access the site further.

Griffin sued, arguing that the Credit Union's failure to make reasonable modifications to its policies and practices that would make its site accessible to the disabled violated the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. The complaint sought injunctive relief as well as costs and attorney's fees. The Credit Union

---

[*] Questions surfaced at oral argument regarding Griffin's eligibility to make use of the Credit Union's ATMs. This argument appears nowhere in the briefing, perhaps because it is tangential or an afterthought to the central inquiry. Plaintiff does mention ATMs in his complaint, stating that they are "available to Defendant's members," J.A. 15, which, as noted, Griffin plainly is not.

4

moved to dismiss for lack of standing, pursuant to Federal Rule of Civil Procedure 12(b)(1), which the district court granted. Griffin now appeals this dismissal.

## II.

Griffin puts his case in broad terms, claiming that the rights generally of people with disabilities to sue for Internet-based harms under the ADA are at stake. But that question is not before us. This case concerns the application of standing doctrine in an electronic age and it is important that we move narrowly in exploring this new territory. Accordingly, we address only whether this plaintiff *who is barred by law from making use of defendant's services* may sue under the ADA for an allegedly deficient website. The answer to this narrow question here is no.

Article III limits the judicial power of the United States to "Cases" and "Controversies." Embedded in this limitation is a "set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Where these requirements are not met, this court would "exceed [its] authority" if it adjudicated the merits of a dispute. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

An injury in fact is an indispensable aspect of constitutional standing; no "Case" or "Controvers[y]" exists without injury. It is "[f]irst and foremost" of the three requirements of constitutional standing. *Spokeo*, 136 S. Ct. at 1547 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)) (describing the other two requirements as causation and redressability). A wrong suffered by a party is only an

5

injury in fact if it is sufficiently "concrete *and* particularized." *Id.* at 1545 (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 180-81 (2000)) (emphasis in original). These are separate criteria which must both be satisfied. *Id.* And when a party seeks injunctive relief, as Griffin does, there is the additional requirement of a "real or immediate threat" that the party will suffer an injury in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Thus, in order to prevail, Griffin must allege an injury that is concrete, particularized, and immediately threatening. It is important that we do not take a cramped view of standing in civil rights cases, lest we impair the remedial purpose Congress had in mind when enacting civil rights statutes. But even under this broad view Griffin's complaint fails to satisfy each of the Supreme Court's requirements. We address them in turn.

A.

Griffin's alleged injury is not concrete. An injury is "concrete" when it is "real and not abstract." *Spokeo*, 136 S. Ct. at 1548. But an injury may be concrete without being "tangible." *Id.* at 1549. In deciding what intangible injuries are concrete, we consult the "judgment of Congress" because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id. See also Moore v. Blibaum & Associates, P.A.*, 693 Fed. Appx. 205, 206 (4th Cir. 2017) ("In particular, the injury-in-fact requirement is not limited simply to financial or economic losses."). Dignitary harms or "stigmatic injur[ies]," while not tangible, may be sufficiently concrete to constitute

6

injury in fact, *Allen v. Wright*, 468 U.S. 737, 754-55 (1984), and therefore may constitutionally be protected by statute.

Griffin has alleged just such a dignitary harm. It is true that his complaint does not include the phrases "dignitary harm" or "stigmatic injury." But such a ritual incantation is unnecessary; dignitary harms are readily inferred by allegations of unequal treatment. *See Allen*, 468 U.S. 752-53. And Congress, in enacting the ADA, intended in part to protect people with disabilities against stigmatic injury. *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003).

But not all dignitary harms are sufficiently concrete to serve as injuries in fact. As Justice O'Connor explained in *Allen v. Wright*, geographic separation between the challenged conduct and the stigmatic injury can reduce the "personal" impact of the injury and render it too "abstract." *Allen*, 468 U.S. at 756-57. "A black person in Hawaii," for example, cannot challenge "a racially discriminatory school in Maine." *Id.* at 757. Otherwise, the federal courts would "transform" into a "vehicle for the vindication of value interests of concerned bystanders." *Id.* at 756 (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

The legal barriers between Griffin and the Credit Union render his injury "abstract" just as the geographic barriers did in *Allen*. *Allen*'s hypothetical Hawaiian litigant could not sue the Maine school because geography made it impossible for the plaintiff to interact directly with the school and be "personally subject" to its discrimination. *Allen* 468 U.S. at 757 n.22. Here, a neutral proposition of federal law

7

makes it impossible for Griffin to interact directly with the Credit Union. The Federal Credit Union Act of 1934 expressly forbids the provision of any products or services to him. 12 U.S.C. § 1759. It is therefore impossible—absent a violation of federal law—for Griffin to be "personally subject" to the dignitary harms allegedly occasioned by the Credit Union's website.

Griffin's assertion of informational harm fares no better than his assertion of dignitary harm, for the same reason. Inability to obtain information is sufficiently concrete to constitute injury in fact only when the information has some relevance to the litigant. In *Federal Election Commission v. Akins*, the Supreme Court explained that plaintiffs who sought information that would "help them . . . evaluate candidates for public office" suffered a concrete injury when they failed to receive it. 524 U.S. 11, 21 (1998). The information was relevant to the plaintiffs' fulfillment of their civic responsibility. *See also Dreher v. Experian Information Solutions, Inc.*, 856 F.3d 337, 345 (4th Cir. 2017). Here, on the other hand, the information Griffin failed to obtain lacks a comparable relevance to him. Griffin sought information on the Credit Union's "services, privileges, advantages, and accommodations and amenities," as well as the physical locations where those services are provided. J.A. 13. But this information lacks the requisite relevance to Griffin; a federal law closes the door of the Credit Union to Griffin whether or not he obtains the information he seeks. 12 U.S.C. § 1759.

B.

Griffin's injury is also not particularized. For an injury to be particularized, it must affect the plaintiff in a way that is "individual." *Lujan v. Defenders of Wildlife*, 504 U.S.

8

555, 560 n.1 (1992); *Daniels v. Arcade, L.P.*, 477 Fed. Appx. 125, 129 (4th Cir. 2012). There must be some connection between the plaintiff and the defendant that "[]differentiate[s]" the plaintiff so that his injury is not "common to all members of the public." *United States v. Richardson*, 418 U.S. 166, 177 (1974) (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). Thus, as the Supreme Court explained in *Lujan v. Defenders of Wildlife*, just "anyone who goes to see Asian elephants in the Bronx Zoo" cannot sue a defendant whose actions have harmed that species in a particular part of the world. 504 U.S. at 566. His injury is not particularized. But, a person who, as a vocation, *studies* Asian elephants in the part of the world in question "plausib[ly]" has enough of a connection to convert the general harm to the species into a particular harm to the plaintiff. *Id.*

Griffin has not pointed to any connection between the defendant and himself that transforms the general harms he alleges into particularized ones. Again, the law of credit unions is dispositive on this point. The Federal Credit Union Act of 1934 positively forbids Griffin from taking advantage of any of the Credit Union's products or services because he does not share the "common bond" of those who may become its members. 12 U.S.C.§ 1759(b). That law severs any connection between the Credit Union and Griffin that could plausibly serve to particularize his alleged injury.

The cases Griffin points to do not counsel the opposite conclusion. In *Menkowitz v. Pottstown Memorial Medical Center*, the plaintiff was a doctor with "staff privileges" at the defendant hospital. 154 F.3d 113, 115 (3d Cir. 1998). Those staff privileges supplied the requisite connection between plaintiff and defendant that converted an

9

otherwise general harm into a particular one. Likewise, visits to a physical location may supply a particularizing connection, as they differentiate the plaintiff from the general public who are barred by distance from ever making such a visit. Griffin's reference to those cases in which a visit was actually made or plausibly contemplated is therefore inapt. Br. for the Appellant at 25-32 (citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1326 (11th Cir. 2013); *Molski v. M.J. Cable*, 481 F.3d 724, 727 (9th Cir. 2007); *Civil Rights Education and Enforcement Center. v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017).

## C.

Griffin has not suffered a concrete and particular injury in the past. There is also not an immediate threat that Griffin will suffer an injury in fact in the future. A plaintiff has standing to sue for injunctive relief when there is "real or immediate threat" that the party will suffer an injury in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Such an injury must be "imminent." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). "[I]mminence is concededly a somewhat elastic concept," but it "cannot be stretched beyond its purpose." *Id.* (quoting *Lujan*, 504 U.S. at 565, n. 2). In short, an injury should be "certainly impending" to serve as the basis for standing in a suit for injunctive relief. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

This court's opinion in *Nanni v. Aberdeen Marketplace* is both insightful and instructive on this point as it pertains to injuries under ADA. 878 F.3d 447 (4th Cir. 2017). There we explained that a plaintiff who experienced a past injury from a visit to a physical location need only show a plausible intent to return to that location in order to

10

have standing to sue for injunctive relief. *Id*. at 455. Nanni, the plaintiff, visited the defendant Marketplace and allegedly discovered that the Marketplace's various ADA violations impeded his use of a wheelchair. *Id.* We held that this was a sufficiently concrete and particular past injury. *Id.* at 456. We further held that Nanni's intent to return to the Marketplace was plausible because he passed the store several times a year on visits to Baltimore and Washington from his home in Delaware. *Id.* And so, despite the distance between the Marketplace and Nanni's home, we held that he had standing to sue. *See also Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (relying on the "totality of facts" to determine the plausibility of an asserted intent to return to an ADA-noncompliant location).

Griffin's complaint does not satisfy the requirements of *Nanni*. The first requirement, a past injury that is concrete and particular, is not met for reasons explained above. And the second requirement is unmet because, unlike the plaintiff in *Nanni*, Griffin has not demonstrated that his intent to return to the Credit Union's website is plausible. Indeed, there are reasons to think it is objectively implausible: why would an individual with no hope of ever making use of the Credit Union's services want to visit a website describing those services? In short, Nanni could take advantage of the store's wares and accommodations. Griffin, by contrast, is ineligible for perfectly neutral reasons to utilize the Credit Union's services.

Griffin points to his status as an ADA tester. It is true that tester status does not destroy standing. *Nanni*, 878 F.3d at 457. But by the same token it cannot create standing in the absence of an otherwise plausible assertion that a return to the website would allow

11

Griffin to avail himself of its services. Even in *Houston v. Marod Supermarkets*, a case relied on heavily by Griffin, tester status, while a factor in favor of the plaintiff, was insufficient to show a threat of future injury without more. 733 F.3d 1323, 1334 (11th Cir. 2013). The Eleventh Circuit explained that the tester-plaintiff's assertion that he would return to the ADA-noncompliant supermarket was plausible only because, even though it was not the closest market to his home, the plaintiff passed the store "regularly" on his trips to Miami-Dade County. *Id.* at 1336. If, however the plaintiff "live[d] hundreds of miles away from the store with no particular reason to return" the facts "may demand a different conclusion." *Id.* Those are the facts here. Griffin may not live hundreds of miles away from the Credit Union, but the legal barriers between the two parties serve the same role as geographic ones. And those same legal barriers mean that Griffin has "no particular reason"—other than his role as a tester, which alone is insufficient—to ever return.

III.

Our decision is not born of any lack of sympathy for people with visual impairments. Those who do not suffer from impairments of this nature must be alert and sensitive to the formidable challenges such impairments impose on the navigation of everyday life. We must be sensitive as well to the wealth of talent that, before the passage of the ADA, was locked behind society's unthinking exclusion of people with disabilities. We thus recognize and respect the Americans with Disabilities Act's transformative goal of "the elimination or reduction of physical and social structures that impede people with some present, past, or perceived impairments from contributing, according to their

12

talents, to our Nation's social, economic, and civic life." *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring).

But to ignore the requirement of an injury in fact in this case would be to transform constitutional standing into a null item. *Spokeo* requires a concrete and particularized harm to find Article III standing, something greater than "a bare procedural violation, divorced from any concrete harm." 136 S. Ct. 1540, 1549 (2016). We are not at liberty to assail the basic principles of *Spokeo* here. Standing doctrine will doubtless pose complicated questions as it is applied to Internet-based harms in the future, but the case before us today is straightforward and narrow. Griffin is not a member of the Credit Union, he is not eligible to become a member of the Credit Union, he has no plans to become eligible to be a member of the Credit Union, and no action we take could possibly make him eligible to become a member of the Credit Union. Under these specific circumstances there can be no injury in fact. We have no occasion to consider here, for example, a case brought by a similarly disabled individual who was eligible for credit union membership in the defendant.

This narrow holding stands in stark contrast to the broad position Griffin would have us adopt. His argument admits of no limiting principle. If adopted, it would allow any aggrieved person to challenge any allegedly deficient website belonging to anyone in the country. It would require us to open the courthouse doors to abstract and hypothetical controversies, in brazen violation of Supreme Court precedent.

Five different district judges in Virginia alone have reached the same conclusion that we reach here. *See Carroll v. Roanoke Valley Community Federal Credit Union*,

13

2018 WL 2921106 (W.D. Va. June 11, 2018); *Carroll v. 1st Advantage Federal Credit Union*, 2018 WL 2933411 (E.D. Va. April 9, 2018); *Carroll v. Washington Gas Light Federal Credit Union*, 2018 WL 2933412 (E.D. Va. April 4, 2018); *Carroll v. ABNB Federal Credit Union*, 2018 WL 1180317 (E.D. Va. March 5, 2018); *Carroll v. Northwest Federal Credit Union*, 2018 WL 2933407 (E.D. Va. Jan. 26, 2018), adhered to on reconsideration, 2018 WL 2933408 (E.D. Va. April 16, 2018). The Constitution contemplates a crucial albeit limited role for the federal judiciary. Our trial court colleagues' fidelity to this vision betrays no lack of feeling, only the presence of a profound respect for law.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

KING, Circuit Judge, concurring in the judgment:

I write separately and concur in the determination of my fine colleagues to affirm the district court. I agree with my friends that either a dignitary harm, or a harm in the form of the denial of access to information, can confer Article III standing under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. *See Allen v. Wright*, 468 U.S. 737, 754-55 (1984) (recognizing that dignitary harm or stigmatic injury can confer standing), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (concluding that "tester" had standing to pursue claim when deprived of statutorily-required information). I disagree, however, that we need to assess and delineate the boundaries of those principles.

In my view, we should resolve this appeal by concluding only that the Complaint fails to sufficiently allege Griffin's intent or plan to return to the Credit Union's website, and that Griffin is therefore not entitled to the sole form of relief being sought, that is, injunctive relief. *See Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455 (4th Cir. 2017) (explaining that, to possess standing to seek injunctive relief, plaintiff must plausibly allege future injury). At bottom, the Complaint offers no plausible suggestion as to why Griffin would ever again visit the Credit Union's website and suffer a future injury. As I see it, that is all we need to say in order to decide his appeal.