In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 18-2887

MATTHEW CARELLO,

*Plaintiff-Appellant,*

*v.*

AURORA POLICEMEN CREDIT UNION,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-09346 — **Thomas M. Durkin**, *Judge.*

———————————

ARGUED FEBRUARY 21, 2019 — DECIDED JULY 15, 2019

———————————

Before EASTERBROOK, SYKES, and BARRETT, *Circuit Judges.*

BARRETT, *Circuit Judge.* Matthew Carello sued the Aurora
Policemen Credit Union, alleging that accessibility barriers to
the Credit Union's website violate his rights under the Americans with Disabilities Act. The district court dismissed the
claim, holding that Carello lacked standing to sue. We agree.

I.

Matthew Carello is blind. To access visual content on the internet, he uses a "screen reader," which reads text aloud to him. A screen reader, however, works only on websites that are designed to support its software. Carello claims that a website run by the Aurora Policemen Credit Union fails to offer such support.

The Credit Union is chartered under the Illinois Credit Union Act, which requires that membership in a credit union be open only to groups of people who share a "common bond." 205 ILCS 305/2(1). This includes, for example, "[p]ersons belonging to a specific association, group or organization," "[p]ersons who reside in a reasonably compact and well-defined neighborhood or community," and "[p]ersons who have a common employer." *Id.* at 305/1.1. In accordance with this law, the Credit Union limits its membership to specified local city and county employees. Membership is required before an individual may enjoy any of the Credit Union's services.

Carello is not eligible for, nor has he expressed any interest in, membership in the Credit Union. Instead, he is a tester: he visits websites solely for the purpose of testing compliance with the Americans with Disabilities Act (ADA), which prohibits places of public accommodation from discriminating "on the basis of disability in the full and equal enjoyment of [their] goods, services, facilities, privileges, advantages, or accommodations," and requires them to make "reasonable modifications" to achieve that standard. *See* 42 U.S.C. § 12812(a), (b). After his visits to the Credit Union's website revealed a potential violation, he sued the Credit Union under the ADA, seeking injunctive relief as well as costs and

attorneys' fees. The district court granted the Credit Union's motion to dismiss Carello's claim, holding that Carello lacked standing to sue because he failed to allege an injury in fact.

## II.

The doctrine of standing imposes a non-negotiable limit on the power of a federal court. It is rooted in Article III, which limits a federal court's power to the resolution of "Cases" or "Controversies." U.S. CONST. art. III, § 2. Because the standing requirement enforces a constitutional restraint on the judicial power, federal courts must "always require[] that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit" before proceeding to the merits of a claim. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). To establish standing, a "plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019).

This case turns on the injury-in-fact requirement, which the Supreme Court has described as the "[f]irst and foremost" element of standing. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998). To satisfy this element, Carello must allege that he suffered an injury that is "both concrete *and* particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). And because he seeks injunctive relief, Carello must also demonstrate that he faces a "real and immediate" threat of future injury; "a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citation omitted).

We can quickly dispense with one of Carello's challenges to the district court's standing analysis. According to Carello, the district court denied him standing because he was a tester, even though both we and the Supreme Court have made it clear that tester status does not deprive a plaintiff of standing. *See*, *e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Carello is right about the cases, but he is wrong about the district court's opinion. The district court did not reason—either explicitly or implicitly—that Carello lacked standing because he was a tester. Instead, the district court recognized that while tester status does not defeat standing, it does not automatically confer it either. A tester must still satisfy the elements of standing, including the injury-in-fact requirement. *Havens Realty*, 455 U.S. at 374–75.

Carello identifies two injuries that he says are each sufficiently concrete and particularized to constitute an injury in fact: a dignitary harm stemming from his inability to use the website and an informational harm resulting from a lack of access to information on the website. Neither of these alleged injuries passes the test, although we stress that it is for a very narrow reason. As the Fourth Circuit recently held in a nearly identical case, a plaintiff who is *legally barred* from using a credit union's services cannot demonstrate an injury that is either concrete or particularized. *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649 (4th Cir. 2019). Our holding is no broader than that.

A.

We begin with Carello's claim that he suffered dignitary harm. There is no doubt that dignitary harm is cognizable; stigmatic injury is "one of the most serious consequences" of

discrimination. *Allen v. Wright*, 468 U.S. 737, 755 (1984). At the same time, "not all dignitary harms are sufficiently concrete to serve as injuries in fact." *Griffin*, 912 F.3d at 654. A plaintiff "'personally denied equal treatment' by the challenged discriminatory conduct" has suffered a concrete injury, but dignitary harm stemming from the mere knowledge that discriminatory conduct is occurring is an "abstract stigmatic injury" that the plaintiff lacks standing to vindicate. *Allen*, 468 U.S. at 755–56 (citation omitted); *see also Clay v. Fort Wayne Cmty. Sch.*, 76 F.3d at 873, 879 (7th Cir. 1996) ("[N]othing suggests that [the black plaintiffs alleging racial discrimination] suffered anything other than indignation: personal offense from the knowledge that unconstitutional conduct is occurring. Indignation is not an injury-in-fact sufficient to confer standing.").

Here, Illinois law prevents Carello's dignitary harm from materializing into a concrete injury. Because Illinois has erected a neutral legal barrier to Carello's use of the Credit Union's services, the Credit Union's failure to accommodate the visually impaired in the provision of its services cannot affect him personally. On the contrary, any blow thrown by the Credit Union is blocked as to Carello. *Cf. Griffin*, 912 F.3d at 654 ("It is therefore impossible—absent a violation of federal law—for Griffin to be 'personally subject' to the dignitary harms allegedly occasioned by the Credit Union's website."). Much like a geographic barrier between the plaintiff and defendant "can reduce the 'personal' impact of the injury and render it too 'abstract,'" *id.* (quoting *Allen*, 468 U.S. at 756–57), the legal barrier here reduces—indeed, eliminates—the cognizable impact of the Credit Union's conduct on Carello, *see id.* at 654 ("Here, a neutral proposition of federal law makes it impossible for Griffin to interact directly with the Credit

Union."). And in the absence of any personal impact on Carello, his alleged injury is necessarily abstract, amounting to mere indignation that the Credit Union is violating the ADA.

Concreteness and particularization are distinct components of an injury in fact, *Spokeo*, 136 S. Ct. at 1548, but in the case of abstract dignitary harm, they are two sides of the same coin. Indignation at violation of the law is not concrete because it does not impact the plaintiff personally; it is not particularized because it does not affect him in an "individual way." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992); *see also Allen*, 468 U.S. at 755–56. For a harm to be particularized, "[t]here must be some connection between the plaintiff and the defendant that 'differentiates' the plaintiff so that his injury is not 'common to all members of the public.'" *Griffin*, 912 F.3d at 655 (alterations and citation omitted).

Here, there is no connection between Carello and the Credit Union that distinguishes him from anyone else who is ineligible for membership and offended by the Credit Union's failure to comply with the ADA. *Cf. Clay*, 76 F.3d at 878–79 ("Appellants' claims [about racial discrimination in the hiring process] are generalized grievances shared in substantially equal measure by a large class of citizens."); *Am. Civil Liberties Union of Ill. v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir. 1986) ("[Deep offense] is not by itself a fact that distinguishes [the plaintiff] from anyone else in the United States who disapproves of such displays."). Without "an otherwise plausible assertion that a return to the website would allow [him] to avail himself of [the Credit Union's] services," Carello is no more entitled to an injunction than any other interested citizen. *See Griffin*, 912 F.3d at 656.

B.

Carello has another theory: he says that the Credit Union caused him an informational harm by failing to make the text on its website accessible to his screen reader. What Carello asserts, however, is not an informational injury properly understood, so it does not offer an alternate route to an injury in fact.

A harm is not an informational injury simply because it has something to do with information. An informational injury occurs when the defendant refuses to provide the plaintiff with information that a law—typically, a sunshine law—entitles him to obtain and review for some substantive purpose. *See, e.g.*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21, 24–25 (1998) (concluding that voters' inability to obtain information subject to disclosure under the Federal Election Campaign Act of 1971 is a sufficiently concrete injury); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (explaining that, to satisfy Article III's injury requirement, advocacy organizations requesting information subject to disclosure under the Federal Advisory Committee Act need only show "that they sought and were denied" the information); *Casillas*, 926 F.3d at 337–38 ("[*Akins* and *Public Citizen*] hold that the denial of information subject to public disclosure is one of the intangible harms that Congress has the power to make legally cognizable." (emphasis omitted)). In such cases, a plaintiff "need not allege any *additional* harm beyond" his failure to receive information that the law renders subject to disclosure. *Spokeo*, 136 S. Ct. at 1549.

This case, however, is about accessibility accommodations, not disclosure. Carello does not complain that the Credit Union withheld information—on the contrary, he

states that the Credit Union openly published the information on its website. Nor does he claim that the information was wholly inaccessible to him—he presumably could have had someone who is sighted read it aloud to him. Carello's complaint is about ease of access—he argues that the Credit Union should have made it possible for him to use his screen reader to more readily retrieve the available information. His alleged injury flows from the Credit Union's failure to support his software, not its refusal to disclose information about its services. And if the nature of his injury were not clear enough in the allegations that he makes, it is crystallized by the relief that he seeks. Carello does not seek an injunction ordering the Credit Union to produce information; he seeks an injunction ordering the Credit Union to reform its website. Carello has no interest in information that he cannot use, but he has a keen (and commendable) interest in forcing the Credit Union to make its website more accessible to the visually impaired.

Carello simply characterizes as "informational" the harm that he claims to have experienced when encountering text that his screen reader could not decipher. That is a dignitary harm, and, as we have already explained, Illinois law prevents it from being either concrete or particularized as to Carello. Because Carello has not identified an injury in fact, he lacks standing under Article III.

## C.

To demonstrate that he has standing to obtain injunctive relief, Carello must show that he faces a "real and immediate threat" of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Carello insists that he has plausibly alleged that he will return to the Credit's Union's website "to ensure that it [i]s accessible to not only himself, but to all other blind

persons in the future." That may be—but it is beside the point. Carello's threatened future injury must be one for which he has standing to seek a remedy. And his alleged future injury is the one that he claims to have suffered already: the dignitary harm stemming from the Credit Union's failure to accommodate his visual impairment. As we have already explained, this harm does not constitute an injury in fact under Article III.

\* \* \*

The district court correctly concluded that Carello lacked standing, and its judgment is AFFIRMED.