# United States Court of Appeals
## For the First Circuit

Nos. 18-1618; 18-1684

MARIA SUÁREZ-TORRES and
NORBETO MEDINA-RODRIGUEZ,

Plaintiffs, Appellants,

v.

PANADERIA Y RESPOSTERIA ESPAÑA, INC., d/b/a PANADERIA ESPAÑA
and IMMOBILIARIA ISLA VERDE, INC.,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Barron, Lipez, and Dyk,[*]
Circuit Judges.

Jose Carlos Velez Colon for appellants, with whom Law Offices of Velez-Colon was on brief.
José Enrico Valenzuela-Alvarado for appellees, with whom Valenzuela-Alvarado, LLC was on brief.

February 17, 2021

---

[*] Of the Federal Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  This appeal arises from a lawsuit brought by appellants Maria Suárez-Torres and Norberto Medina-Rodriguez against appellees Panaderia y Reposteria España, Inc., a bakery in Carolina, Puerto Rico, and Inmobiliaria Isla Verde, Inc. (collectively, "Panaderia España")[1] under the Americans with Disabilities Act of 1990 ("ADA")[2] and the Puerto Rico Civil Rights Act.[3]  Suárez-Torres and Medina-Rodriguez appeal the district court's post-judgment denial of their motion for attorney's fees and motion to reopen.  After careful review, we affirm.

## I.

Suárez-Torres and Medina-Rodriguez are described in the complaint as "testers" who visit local places of public accommodation in Puerto Rico primarily to assess and challenge violations of the ADA.  Suárez-Torres and Medina-Rodriguez allege that they each visited Panaderia España on separate occasions -- Medina-Rodriguez in early 2015 and Suárez-Torres in early 2016 -- and encountered barriers to their equal access and full enjoyment of appellees' facilities, services, goods, and amenities.  In April

---

[1]  The parties do not explain in their briefing the relationship between Panaderia y Reposteria España, Inc. and Inmobiliaria Isla Verde, Inc., and the record provides no insight. We therefore treat the defendants as a single entity (Panaderia España), as the parties have done throughout these proceedings.

[2]  42 U.S.C. §§ 12101-12213.

[3]  P.R. Laws Ann. tit. 1, § 13.

2016, Suárez-Torres and Medina-Rodriguez filed suit against Panaderia España, alleging that the bakery had violated the ADA by failing to remedy architectural barriers -- specifically, inadequate accessible parking, lack of accessible seating and service counters, and structural deficiencies in the accessible restroom -- and by maintaining a discriminatory policy of keeping the accessible restroom, but not other restrooms, locked, which forced disabled individuals to ask for a key to use the restroom. Shortly thereafter, Suárez-Torres and Medina-Rodriguez sent a letter to Panaderia España requesting that all ADA violations be remedied and demanding a settlement of $4,500.

In January 2017, an expert retained by Suárez-Torres and Medina-Rodriguez conducted an inspection of the bakery and drafted a report, which was provided to Panaderia España. At a status conference shortly after the inspection, the district court granted Panaderia España's request to retain its own expert to conduct a site inspection within 30 days. The court also set a deadline for the parties to file simultaneous motions for summary judgment.

In April 2017, Panaderia España filed a motion for summary judgment, challenging appellants' standing as testers and arguing that appellants failed to show an injury-in-fact because they did not prove they actually visited the bakery. It also argued that appellants' claims were moot because the bakery had

renovated its premises to comply with ADA standards. In a sworn statement, the owner of the bakery attested to the renovations, stated that he had hired an expert to inspect whether the renovations brought the property into compliance with the ADA, and explained that the expert found additional "situations" involving ADA noncompliance that would "be fully corrected soon." Suárez-Torres and Medina-Rodriguez filed an opposition to Panaderia España's motion for summary judgment, but it was stricken as untimely and noncompliant with the federal rules.

The district court denied Panaderia España's summary judgment motion in an order dated January 23, 2018. The court first rejected Panaderia España's argument that Suárez-Torres and Medina-Rodriguez lacked standing because of their status as testers. The court concluded that "'tester' motive does not defeat standing," and may even make it more likely that plaintiffs would return to the bakery, even if only to ensure ADA compliance. The court also declined to afford any weight to Panaderia España's contention that plaintiffs were lying about whether they visited the bakery.

Then, turning to Panaderia España's claim that the business was renovated to comply with ADA standards and that any remaining violations would be "fully corrected soon," the court explained that,

the motion for summary judgment fails to set forth evidence of the completion of these changes or adjustments to the design of the locale, which would thereby make the plaintiffs' ADA claims moot at this stage. Because defendants do not purport to have addressed the alleged ADA violations, the motion for summary judgment is **DENIED WITHOUT PREJUDICE.** Defendants are hereby ordered to submit evidence of the completion of the changes to the design of the business establishment that would make it fully compliant with all applicable standards and guidelines under [the] ADA.

The district court convened a status conference two days later. The minute entry for that conference reads, in its entirety:

[Counsel for] defendants informed [the court] that completion of the changes to be made at Panaderia y Reposteria España to comply with [the] ADA shall be completed within 90 days. Hence, the defendants were granted the request [for 90 days to make the identified changes] and shall file a motion by not later than April 27, 2018 and shall submit the pertinent documents in compliance as to the changes made at the establishment under [the] ADA. No objection by counsel for plaintiffs.

Less than two weeks after that status conference -- well before the ninety-day deadline for Panaderia España to complete and submit evidence of the outstanding architectural renovations -- Suárez-Torres and Medina-Rodriguez filed a motion to dismiss their claims brought under the Puerto Rico Civil Rights Act and for final judgment on their ADA claims "on account that [they] obtained the requested relief under federal law and [we]re fully

- 5 -

satisfied with the result of th[e] civil action." Appellants specifically noted that judgment in their favor was appropriate because Panaderia España had agreed to complete the "required changes or adjustments to the design of the locale" within 90 days.

In an electronic docket order, the district court "noted" plaintiffs' motion for judgment, indicated that it would "dismiss[] [the] state law claims with prejudice and ADA claims without prejudice," and stated that the plaintiffs "may file a motion to reopen [the] case if the defendants fail to comply with the deadlines established in the most recent status conference." The court entered a judgment of dismissal in accordance with that docket order the same day.

Suárez-Torres and Medina-Rodriguez then moved for attorney's fees. They argued that they were "prevailing parties" under the ADA's fee-shifting provision, 42 U.S.C. § 12205, because Panaderia España admitted noncompliance with the ADA and the district court had ordered it to submit evidence of compliance. Panaderia España opposed, arguing that plaintiffs failed to litigate the case and their attorney's ethically suspect conduct precluded a fee award.

The district court denied the motion, remarking that it "certainly did not address the merits of the plaintiffs' ADA claim" and "did not place itself in a position to enforce the terms of any settlement agreement or to compel the defendant to make any

- 6 -

alterations to its place of business." To the contrary, the court explained, it had merely "noted the plaintiffs' satisfaction with the defendants' voluntary modifications to the building," proceeded to enter judgment "as requested," and notified plaintiffs of their ability to request that the case be reopened if the agreed-upon changes were not completed in a timely manner.

Panaderia España secured an extension of time to submit evidence of the completed alterations. Two weeks after the new deadline, it filed a "Motion in Compliance with Order" accompanied by an expert report. The report detailed the many architectural changes that Panaderia España had made and concluded that the premises were,

> in compliance with the [ADA] as they relate to persons with disabilities parking at designated accessible spaces, entering the facilities, and being able to reach and make use of the accessible sales and service counter, tables and restroom.

In response, Suárez-Torres and Medina-Rodriguez moved to reopen the case. They argued that the expert report showed that Panaderia España was still violating the ADA because: (1) a newly designed accessible parking space encroached on a pedestrian walkway, (2) certain pipes in the accessible restroom were not properly insulated or covered, and (3) Panaderia España continued to maintain its discriminatory policy of locking the accessible restroom.

The district court denied the motion to reopen in a brief electronic docket order:

> [The motion to reopen] stems from Panaderia [España's] motion in compliance (Docket No. 93) that it has addressed any and all alleged and supposed structural and design deficiencies raised in the ADA complaint in regards to the establishment's parking, access aisles, tables, service counters and restrooms. Therefore, the court finds that the new and different allegations from those in the claim are not the subject or object of this suit. Accordingly, the court denies the plaintiffs' motion to reopen the case.

Suárez-Torres and Medina-Rodríguez timely appealed both the district court's order denying their request for attorney's fees and its order denying their motion to reopen.

**II.**

**A.   Standing**

Panaderia España argues that appellants are not entitled to collect fees because they lacked standing to pursue their ADA claims in the first instance. Specifically, Panaderia España contends that appellants never visited the bakery themselves and, even if they did, they were not injured because the only purpose of their visit was to test ADA compliance. Panaderia España raised those same arguments as grounds for summary judgment below but the district court disagreed, holding that Panaderia España offered "no extraneous evidence to support the[] contention that the court

should doubt the sincerity of plaintiffs' averment," and that appellants' tester status did not defeat standing.

Panaderia España never challenged the district court's determination that appellants had standing. Instead, the case settled shortly after summary judgment was denied and, thereafter, the court entered a judgment of dismissal. Panaderia España now seeks to raise lack of standing as an alternative ground for affirmance of the district court's post-judgment rulings on appellants' motions for attorney's fees and to reopen. Arguably, principles of collateral estoppel might preclude Panaderia España from relitigating the district court's standing determination on summary judgment. See Burlington Northern R.R. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1233 n.8 (3d Cir. 1995) (explaining that denial of summary judgment can sometimes support collateral estoppel); but see Kay R Elect. Corp. v. Stone & Webster Constructions Co., 23 F.3d 55, 59 (2d Cir. 1994) (concluding that the denial of a motion for summary judgment is not a final judgment supporting issue preclusion). Moreover, whether appellants had standing to bring their ADA claims in the first instance may be irrelevant to their ability to seek attorney's fees. See D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc., 705 F.3d 1223, 1236 (10th Cir. 2013) (explaining that "a district court may still award attorney's fees after dismissing the underlying action for lack of subject-matter jurisdiction. . . . because a claim for attorney's

- 9 -

fees gives rise to issues separate and distinct from the merits of the original cause of action" (internal citation omitted)).

On the other hand, Panaderia España's argument challenges the existence of an injury-in-fact, a constitutional standing requirement that implicates our subject-matter jurisdiction and, hence, we may be obliged to consider it. Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 51-52 (1st Cir. 2014) ("The presence or absence of constitutional standing implicates a federal court's subject-matter jurisdiction. . . . [A] federal court is obliged to resolve that issue even if the parties have neither briefed nor argued it."). We need not resolve whether Panaderia España's standing challenge is procedurally proper, however, because we conclude that it fails in any event.

The three familiar requirements of standing are: (1) injury in fact, (2) a causal connection between the injury and the defendant's alleged misconduct, and (3) that the injury would have been redressed by a favorable outcome. Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560-61 (1992). Panaderia España challenges only the first prong, alleging that appellants fabricated their visits to the bakery and cannot establish an injury because they are testers.[4]

---

[4] Panaderia España does not challenge the other requirements of an injury-in-fact under the ADA: whether appellants (1) are disabled within the meaning of the ADA, (2) encountered barriers at the property in violation of the ADA, and (3) were deterred

- 10 -

The burden of proof to establish standing is consistent with "the manner and degree of evidence required at the successive stages of the litigation." Id. at 561. Where, as here, the case progresses to the summary judgment stage, the moving party -- Panaderia España -- must initially support its challenge to standing "by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish . . . a genuine dispute [of material fact]." Fed. R. Civ. P. 56(c)(1). The nonmoving party -- Suárez-Torres and Medina-Rodriguez -- must then counter with specific facts supported by affidavits or other affirmative evidence. See Libertad v. Welch, 53 F.3d 428, 436 (1st Cir. 1995); see also Day v. Bond, 500 F.3d 1127, 1132 (10th Cir. 2007) ("To prevail at summary judgment on standing grounds, the defendant must show that the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing. . . . 'In response to a summary judgment motion,' the plaintiff cannot 'rest on "mere allegations," but must "set forth" by affidavit or other evidence

---

from patronizing the property in the future because of those violations. See, e.g., Disabled Ams. For Equal Access, Inc. v. Ferris Del Caribe, Inc., 405 F.3d 60, 64 (1st Cir. 2005) (explaining the requirements of establishing an injury-in-fact under the ADA). Moreover, the second and third elements of standing are uncontroversial: Panaderia España's alleged failure to comply with the ADA is the cause of appellants' injury and that injury would have been redressed by a favorable outcome requiring those violations to be remedied.

"specific facts"' regarding the elements of standing." (quoting Lujan, 504 U.S. at 561)); Wyoming v. Oklahoma, 502 U.S. 437, 464 (1992) (Scalia, J., dissenting) ("The standing issue is obviously subject to different evaluation, depending upon the stage the litigation has reached. . . . [To] obtain or avoid summary judgment[, the] moving party must 'show that there is no genuine issue as to any material fact,' and [the] nonmoving party cannot rest on 'mere allegations' to counter a properly supported motion, but must set forth 'specific facts' through affidavits or other evidence." (quoting Fed. R. Civ. P. 56)).

In support of its contention that appellants did not actually visit the bakery, Panaderia España offers no more than its assertion that appellants fabricated the visits described in the complaint. Panaderia España fails to substantiate its allegation or point to any supporting evidence in the record. Such speculation cannot support a challenge to standing at the summary judgment stage. Accordingly, we conclude that Panaderia España failed to meet its initial burden to challenge standing at the summary judgment phase and, like the district court, decline to afford any weight to the unsupported allegation that appellants lied about their visits to the bakery.

In contrast, Panaderia España did proffer support in favor of its argument that appellants and their attorney are "testers" by offering the statements of appellants describing

themselves as testers.  Panaderia España contends that, as testers, appellants are unable to establish an injury because their only motivation in visiting the bakery was to detect ADA violations.

We have not previously addressed the impact of a plaintiff's status as a "tester" on her ability to establish standing under the ADA.  However, the circuits that have considered this issue have uniformly concluded that an individual's "tester" status does not defeat standing.[5]  As the Eleventh Circuit explained in Houston v. Marod Supermarkets, Inc., the ADA guarantees the right of any individual to be free from "disability discrimination in the enjoyment of [public places of accommodation] regardless of [the individual's] motive for visiting the facility."  733 F.3d at 1332.  Congress did not limit the protections of the ADA to "clients or customers" or otherwise impose a bona fide visitor requirement.  Id. at 1332-34 (contrasting 42 U.S.C. §§ 3604(a),[6] and 12182(b)(1)(A)(iv),[7] which

[5] See Mosley v. Kohl's Dep't Stores, Inc., 942 F.3d 752, 758 (6th Cir. 2019); Griffin v. Dep't of Labor Fed. Credit Union, 912 F.3d 649, 656 (4th Cir. 2019); Civil Rights Educ. and Enf't Ctr. v. Hosp. Props. Tr., 867 F.3d 1093, 1101-02 (9th Cir. 2017); Colo. Cross Disability Coal. v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211-12 (10th Cir. 2014); Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1332-34 (11th Cir. 2013).

[6] Pursuant to 42 U.S.C. § 3604(a), it shall be unlawful "[t]o refuse to sell or rent after the making of a bona fide offer . . . to any person because of race, color, religion, sex, familial status, or national origin."

[7] Pursuant to 42 U.S.C. § 12182(b)(1)(A)(iv), three prohibited activities -- denial of a benefit, failure to provide an equal

do contain such requirements). Hence, such limitations should not be read into the ADA. Id. We agree with this analysis. Accordingly, we conclude that appellants' status as testers does not defeat standing.[8]

**B. Attorney's Fees**

Parties in the United States "ordinarily [are] required to bear their own attorney's fees" absent explicit fee-shifting authority. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 602 (2001). The ADA contains such explicit authority:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs . . . .

42 U.S.C. § 12205.

---

opportunity to participate in a benefit, and failure to ensure disabled individuals are not segregated -- are limited to "clients[s] or customer[s] of the . . . public accommodation."

[8] The civil rights movement has a long history of using testers to uncover and illustrate discrimination. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 373-75 (1982) (a tester sued a realtor for providing inaccurate or incomplete housing information); Pierson v. Ray, 386 U.S. 547, 552-54 (1967) (a group of black clergymen testers challenged their removal from a segregated bus terminal in Jackson, Mississippi); Evers v. Dwyer, 358 U.S. 202, 203-04 (1958) (black passenger tester challenged being barred from the white section of a segregated bus in Memphis, Tennessee). We recognize that appellee argues that appellants' attorney has abused that testing tradition in this and other ADA cases. We make no judgment about the merits of those allegations. They are not germane to the issues in this appeal.

- 14 -

To recover fees under the ADA's fee-shifting provision, a party must demonstrate that she has prevailed in the litigation. Id. The term "prevailing party" is a "legal term of art," Buckhannon, 532 U.S. at 603, and "[t]he concepts that shape th[at] term apply broadly to the entire universe of federal fee-shifting statutes." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 8 (1st Cir. 2011). To qualify as a "prevailing party," the party seeking to recover fees must demonstrate (1) "a material alteration of the legal relationship of the parties" (2) that possesses the requisite "judicial imprimatur." Buckhannon, 532 U.S. at 604-05 (quoting Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)); see also Hutchinson, 636 F.3d at 8-9. We review a district court's determination as to "prevailing party" status de novo. Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009).

## 1. Material Change in Legal Relationship

We readily conclude that appellants have established the first requirement of prevailing party status -- that a material change occurred in the parties' legal relationship. A material change occurs when the plaintiff succeeds on "any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing the suit." Tex. State Tchrs. Ass'n, 489 U.S. at 789 (quoting Hensley v. Echerhart, 461 U.S. 424, 433 (1983)).

- 15 -

As a result of the instant litigation, Panaderia España hired a structural engineer to assess ADA compliance and made substantial -- albeit insufficient, according to appellants -- alterations to the bakery.  Those changes, detailed in the report of Panaderia España's expert, addressed several of the concerns appellants outlined in their complaint, including the lack of accessible parking, the height of service and dining counters, and various structural issues in the accessible restroom.  By causing Panaderia España to take substantial steps toward ADA compliance, Suárez-Torres and Medina-Rodriguez achieved at least some of the benefits sought in filing their suit and, therefore, a material change occurred in the legal relationship of the parties.

### 2.  Judicial Imprimatur

The judicial imprimatur inquiry looks to the level of court involvement in the parties' changed relationship. Buckhannon, 532 U.S. at 605-06.  A voluntary change in conduct by the defendant, "although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur" for prevailing party status.  Id. at 605.  In Buckhannon, the Supreme Court identified only two outcomes that necessarily satisfy the judicial imprimatur requirement: (1) "judgments on the merits" and (2) "settlement agreements enforced through a consent decree."  Id. at 604.  A narrow reading of Buckhannon limits a finding of judicial imprimatur to one of

- 16 -

those two circumstances.  See, e.g., Smith v. Fitchburg Pub. Schs., 401 F.3d 16, 23 (1st Cir. 2005).

We have held, however, that Buckhannon should not be read so narrowly as to require courts to "look exclusively at the label attached to a particular order."  Hutchinson, 636 F.3d at 9; see also Smith, 401 F.3d at 26 ("[W]e do not foreclose the possibility of a broad reading [of Buckhannon] . . . .").  Instead, "an inquiring court must consider 'whether the order contains the sort of judicial involvement and actions inherent in a "court ordered consent decree."'"  Hutchinson, 636 F.3d at 9 (quoting Aronov, 562 F.3d at 90).  To that end, we consider both the content and the context of the order by applying the following factors identified in Hutchinson v. Patrick: (1) "whether the change in the legal relationship between the parties was 'court-ordered,'" (2) "whether there was 'judicial approval of the relief vis-à-vis the merits of the case,'" and (3) "whether there exists continuing 'judicial oversight and ability to enforce the obligations imposed on the parties.'"  Id. (quoting Aronov, 562 F.3d at 90).

Suárez-Torres and Medina-Rodriguez initially contend that the district court's summary judgment ruling was functionally equivalent to a full and complete judgment on the merits and, therefore, makes them prevailing parties even under the narrow reading of Buckhannon.  According to appellants, the court necessarily addressed Panaderia España's merits argument to

- 17 -

conclude that, even in the absence of opposition,[9] summary judgment was not warranted.  But even if we were to assume that is so (and we do not decide that it is), plaintiffs point to no authority indicating that an order <u>denying</u> summary judgment is equivalent to a "judgment[] on the merits" within the meaning of <u>Buckhannon</u> so as to automatically qualify plaintiffs as "prevailing parties." <u>See</u> 532 U.S. at 604; <u>see</u> <u>also</u> <u>Aronov</u>, 562 F.3d at 90 ("<u>Buckhannon</u> contrasted final judgment on the merits . . . with . . . for example, securing the reversal of a directed verdict . . . .").[10]

Appellants also argue that the application of the <u>Hutchinson</u> factors demonstrates that the summary judgment order contains the sort of judicial involvement and actions inherent in a "court ordered consent decree."  We disagree.

---

[9] As we have already explained, appellants attempted to file an opposition to summary judgment, but it was stricken for failure to comply with the federal rules.

[10] We have not yet determined whether some interlocutory orders can satisfy the judicial imprimatur requirement of the prevailing party test.  As appellants note, several circuits have answered that question in the affirmative, but only in the materially different context of an interlocutory decision awarding preliminary injunctive relief. <u>See</u> <u>People Against Police Violence</u> v. <u>City of Pittsburgh</u>, 520 F.3d 226, 232-33 (3d Cir. 2008) (holding that a preliminary injunction that addresses the merits and alters the status quo can confer prevailing party status); <u>see</u> <u>also</u> <u>Kansas Jud. Watch</u> v. <u>Stout</u>, 653 F.3d 1230, 1238 (10th Cir. 2011); <u>Dearmore</u> v. <u>City of Garland</u>, 519 F.3d 517, 524-26 (5th Cir. 2008); <u>Watson</u> v. <u>County of Riverside</u>, 300 F.3d 1092, 1095-96 (9th Cir. 2002).

We first ask whether the change in the parties' legal relationship was "court-ordered." Hutchinson, 636 F.3d at 9. Appellants answer that question affirmatively. They contend that Panaderia España failed to proffer evidence of remedial measures until the court denied summary judgment, ordered Panaderia España to submit evidence of "full[] complian[ce]," and enforced that order with a ninety-day deadline at the January 2018 status conference. According to appellants, the district court effectively "forced Panaderia España to do something it otherwise would not have had to do -- namely, agree [to] become fully compliant with the ADA [] within 90 days."

The record, however, belies that assertion. In support of its motion for summary judgment, and prior to any of the judicial actions referenced by appellants, Panaderia España submitted a declaration by its owner stating that he had already hired a structural engineer to inspect the property and had recently remodeled "[in] compl[iance] with all ADA Standards." Panaderia España admitted voluntarily that its hired expert detected additional ADA violations that would be fully corrected "soon."

The court's subsequent order and imposition of the ninety-day deadline did not purport to require Panaderia España to do what it had already done. It simply directed Panaderia España to substantiate its claims that its property was or would soon be

- 19 -

"fully compliant with all applicable standards and guidelines under [the] ADA" to the extent it hoped to "make the plaintiffs' ADA claims moot at this stage." Such court involvement does not render the changed relationship "court-ordered" within the meaning of the first factor of the Hutchinson inquiry. See Aronov, 562 F.3d at 92-93 ("A plaintiff does not become a prevailing party if the court merely recognizes what the [defendant] has voluntarily agreed to [do] . . . ." (citing Smith, 401 F.3d at 27)); see also Hutchinson, 636 F.3d at 9.

Turning to the second factor, we consider whether the district court "engaged in a sufficient appraisal of the merits," even in the absence of a judgment on the merits. Hutchinson, 636 F.3d at 10. Appellants contend that the summary judgment order included an implicit acknowledgement that the bakery violated the ADA. According to appellants, the court would not have required Panaderia España to follow through on its promise to make certain structural changes and proffer evidence of full compliance with the ADA if such changes were not required by the ADA.

Even if we agreed with appellants' view that the district court's ruling implicitly addressed the merits, the Supreme Court "ha[s] not awarded attorney's fees where the plaintiff . . . acquired a judicial pronouncement that [a] defendant has violated the [law] unaccompanied by 'judicial relief.'" Buckhannon, 532 U.S. at 606 (quoting Hewitt v. Helms, 482 U.S. 755, 760 (1987));

- 20 -

see also Aronov, 562 F.3d at 90 ("Buckhannon contrasted final judgments and court-ordered consent decrees with situations which failed to meet the judicial imprimatur test: for example . . . acquiring a judicial pronouncement that a defendant has violated the Constitution unaccompanied by 'judicial relief' . . . ." (quoting Buckhannon, 532 U.S. at 605-06)).  Hence, an implicit appraisal of the merits is insufficient under the second prong of the Hutchinson test.

The third and final factor requires an assessment of whether the order imposes "an obligation to comply" and whether there exists "judicial oversight to enforce that obligation." Hutchinson, 636 F.3d at 10 (quoting Aronov, 562 F.3d at 91).  It is well established that a trial court retains jurisdiction to enforce its judgments.  See, e.g., Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 286 (D.C. Cir. 1993).  The third prong of the judicial imprimatur inquiry, however, requires more.

In Hutchinson, we considered whether an order approving a settlement agreement made the plaintiffs prevailing parties. 636 F.3d at 6.  The order "expressly retained jurisdiction over the case," and it instructed that the "case not be closed and that judgment not enter pending compliance with the terms" of the underlying settlement agreement.  Id. at 10 (internal citation omitted).  The terms of the underlying agreement also outlined the parameters of the court's enforcement authority, which included

the use of "any appropriate equitable or remedial power" and required court approval for any revisions to the agreement. Id. at 11 (internal citation omitted). We explained that the district court's explicit reservation of jurisdiction and the oversight provided by terms of the settlement agreement "distinguish[ed] the case at hand from the swath of cases in which a district court merely recognizes the fact of a settlement and dismisses the underlying action." Id. at 10-11.

Here, the court entered an order "noting" the plaintiffs' motion for judgment of dismissal, and, thereafter, entered judgment and closed the case even though defendants had not yet submitted any additional evidence of ADA compliance. The court did identify a mechanism for some judicial oversight, stating that Suárez-Torres and Medina-Rodriguez could "file a motion to reopen the case if the defendants fail[ed] to comply with the deadlines established at the [January 2018] status conference." In so informing the plaintiffs, the court did not commit to overseeing the execution of a settlement, suspend final judgment until compliance was achieved, or otherwise indicate that it would use equitable or remedial powers to enforce the terms of an agreement between the parties.

Instead, the court identified the availability of a post-judgment remedy and indicated the ground upon which it would entertain a motion for such a remedy. That limited option for

further relief stands in stark contrast to the settlement enforcement in Hutchinson or the ongoing role of a court in the context of a consent decree. See, e.g., In re Pearson, 990 F.2d 653, 658 (1st Cir. 1993) ("A consent decree is not simply a contract entered into between private parties seeking to effectuate parochial concerns. The court stands behind the decree, ready to interpret and enforce its provisions." (citations omitted)). Whereas a violation of settlement terms in the latter circumstances results in compliance proceedings in the enforcing court, Suárez-Torres and Medina-Rodriguez were entitled only to request that the court exercise its discretion to reopen the case if Panaderia España failed to keep its promise.

In short, Panaderia España voluntarily agreed to make substantial changes in response to appellants' complaint, and appellants have failed to demonstrate the requisite judicial imprimatur on that outcome to make them prevailing parties.

## C.   Motion to Reopen

The finality of judgments is a basic tenet of our system of jurisprudence. United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 660 (1st Cir. 1990). The decision to grant or deny a motion to disturb a final judgment is, therefore, committed to the "sound discretion of the trial court." Id. Accordingly, we review a district court's denial of a motion to reopen for abuse of discretion. Kinan v. Cohen, 268 F.3d 27, 32 (1st Cir. 2001).

Appellants contend that the district court erred in denying their motion to reopen, which alleged that (1) a newly designated accessible parking spot unlawfully obstructed a pedestrian walkway, and (2) Panaderia España continued to maintain a policy of leaving the accessible restroom locked to the public.[11] The district court denied the motion to reopen in a summary order, concluding that the allegations raised therein were "new and different" from those in the original action and, therefore, did not warrant reopening the case.

With respect to the encroachment of the accessible parking spot on a public walkway, plaintiffs recognize that they did not raise this specific claim in their initial complaint. Indeed, they could not have included such an allegation because the issue arose only after Panaderia España attempted to remedy the lack of accessible parking. Appellants nevertheless contend that their encroachment-based claim is captured within the complaint because, for purposes of the ADA, "the totality of barriers at the public accommodation constitute[s] the factual underpinnings of a single legal injury, namely, the failure to remove architectural barriers in violation of the ADA."

---

[11] Appellants also claimed in their motion to reopen that certain pipes in the newly renovated accessible restroom were not insulated or configured to protect against contact, but they do not renew that claim on appeal.

Several circuits have held that an ADA plaintiff who has filed suit after encountering a barrier in a place of public accommodation may challenge all other barriers on that property related to her disability, including those of which she was unaware when she initially filed her complaint. See Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1044 (9th Cir. 2008) ("Even if a disabled plaintiff did not know about certain barriers when the plaintiff first filed suit, that plaintiff will have a 'personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers related to that person's particular disability." (quoting Massachusetts v. EPA, 549 U.S. 497, 517 (2007)); see also Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 188-89 (2d Cir. 2013) (per curiam); Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 950 (9th Cir. 2011) (en banc); Steger v. Franco, Inc., 228 F.3d 889, 893-94 (8th Cir. 2000).

However, this case does not present that issue. It does not matter whether appellants could have pursued their encroachment claim if they had continued to litigate their case. The question before the district court was whether it should disturb final judgement based on a concededly new, although related, argument for noncompliance. We conclude that the district court did not abuse its broad discretion in answering that question in the negative.

- 25 -

The district court similarly did not abuse its discretion in declining to reopen the case based on appellants' allegations that Panaderia España continues to maintain a discriminatory policy of leaving the accessible restroom locked. This claim was plainly raised in the initial complaint. The record shows, however, that the agreement between the parties resulting in dismissal was apparently limited to Panaderia España agreeing to remedy the identified structural violations, but not the restroom policy.

In their motion for a judgment of dismissal, appellants expressed their satisfaction with Panaderia España's agreement to complete the "required changes or adjustments to the design of the locale," without mentioning an agreement regarding the accessible restroom policy. Similarly, in its motion certifying compliance with the 90-day deadline, Panaderia España stated only that its "facilities comply with all ADA Standards." Hence, the district court reasonably concluded that Panaderia España remedied "any and all alleged and supposed structural and design deficiencies raised in the ADA complaint," that the restroom policy was outside of the scope of the parties' settlement, and, thus, that the allegation regarding the operation of the accessible restroom did not justify disturbing final judgment. Accordingly, the district court did not abuse its discretion in denying appellants' motion to reopen.

Affirmed.